## WESTERN UNION TELEGRAPH CO. *v.* DETROIT & MACKINAC RAILWAY CO.

1. CONTRACTS—NONPERFORMANCE OF ABSOLUTE CONTRACT NOT EX-CUSED BY ACT OF GOD.

     Where one has bound himself to do a certain act, with no exceptions, and it is not impossible of performance, he must do it, whether the force which destroyed the subject-matter or made it difficult of performance was or was not the act of God.[1]

2. SAME.

     Where a railway company, by its contract with a telegraph company, agreed, with no exceptions, to furnish the labor to reconstruct a telegraph line, which was constructed along the railway company's right of way for their joint service, whenever requested so to do by the telegraph company, it is bound thereby, and the fact that the line was destroyed by act of God will not excuse it from performing.[2]

3. SAME—PERFORMANCE OF ACT NOT PROVIDED FOR IN CONTRACT NOT REQUIRED.

     A temporary line, erected by both parties for their immediate service, was not such reconstruction as was provided for in the contract, and, therefore, the railway company was under no obligation to pay therefor.[3]

Error to Bay; Houghton (Samuel G.), J. Submitted October 21, 1925. (Docket No. 13.) Decided December 22, 1925. Rehearing denied April 6, 1926.

---

[1]Contracts, 13 C. J. § 715; [2]Id., 13 C. J. § 718; [3]Id., 13 C. J. § 482.
Act of God as excuse for nonperformance of contract, see note in L. R. A. 1916F, 26.

*Continued from Vol. 232.

Assumpsit by the Western Union Telegraph Company against the Detroit & Mackinac Railway Company for services rendered. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed, and no new trial ordered.

*Henry & Henry* and *Lewis J. Weadock,* for appellant.

*Stoddard & McMillan,* for appellee.

BIRD, J. These parties entered into a contract in January, 1897, whereby a telegraph line should be erected along the main line and branches of defendant's railway lying between Bay City and Cheboygan. In a general way it may be stated that the plaintiff was to furnish the equipment and the defendant the labor in the erection of the same. The line was duly constructed as planned and was in operation for many years and until February, 1922, when a very severe sleet storm wrecked about 107 miles of it. Both parties joined in restoring service. This was done by erecting a temporary line. When this was finished they fell into a dispute as to which should pay for the labor. As immediate restoration was essential to both, defendant insisted the expense should be borne equally. Plaintiff insisted that under the terms of the contract defendant should pay for all the labor that was used in constructing the temporary line. The material part of the contract is, as follows:

"The railway company also agrees to furnish at its own expense all the labor including skilled linemen to maintain the telegraph company's lines of poles and wires now erected or hereafter erected along the railway company's railroads and extensions and branches thereof, and leased or controlled roads, including said poles and wire or wires between Prescott and Alpena, in good order and repair, and to reconstruct said lines of poles and wires when required by the telegraph company; poles, wire, insulators and other materials

for such repair and reconstruction being furnished by the telegraph company as hereinbefore provided."

Upon this issue the parties went to trial and the court directed a verdict for the plaintiff for the value of the labor it had expended.

The real question is whether defendant was bound by its contract to erect this temporary line.   Two reasons are given by it, why it should not be so held.

"(1) That the storm was so severe and destructive as to constitute a contingency not provided for in the contract—an act of God—not in the contemplation of the parties when the contract was made.

"(2) That the work done to re-establish temporary service was neither 'maintenance,' 'reconstruction' nor 'repairs' within the meaning of the contract."

1. The defendant, by its contract, promised to reconstruct the line when requested by plaintiff.   This engagement was an absolute one.   The contract contained no exceptions on account of its destruction by the elements.   The rule in such cases is that where one has bound himself to do a certain act, with no exceptions, and it is not impossible of performance, he must do it, whether the force which destroyed the subject-matter or made it difficult of performance was or was not the act of God.

6 R. C. L. p. 1001, lays down the rule:

"The theory that when a party by his own contract creates a charge or duty upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract, is not infrequently applied where the impediment comes from the act of God. · This rule, though it may be harsh in its operation, has been defended on the ground that where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or, rather, the law leaves it where the agreement of the parties has put it, and that the law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by

design or neglect, inserted in their agreement. In fact, there are statements in many decisions that a *vis major*, or inevitable accident will not excuse the nonperformance of an absolute promise;" citing many cases in support of the rule.

We are in no doubt that it was the duty of defendant under its contract to reconstruct the telegraph line if requested by plaintiff after it was destroyed by the elements as soon as the weather conditions would permit.

2. But defendant says that what was done in providing for a temporary line to restore service was not the "reconstruction" provided for in the contract. It was a temporary line hastily thrown together to provide immediate service for both parties until reconstruction could take place. In fact, it was an emergency in which both joined to overcome as both had to have immediate service. In view of this it is said by the defendant that the expense should be borne equally. It appears that immediately after the destruction of the line the parties had a conference at which it was agreed that a temporary line should be constructed to restore service. The defendant needed immediate service to operate its trains. The plaintiff needed it for its commercial messages. Both joined in the work, plaintiff restoring the line between Bay City and East Tawas, and the defendant restoring the upper part of the line. Plaintiff's foreman testified that from the five wires which constituted the line he made one wire. They attached it to anything they could find. He said:

"Why, I think the repairs made were the best they could, under the circumstances. They went ahead, and where poles had been broken off, instead of trying to reset or set new poles they lashed the stumps up with the poles, fastened the wire on the fence posts where there weren't any standing poles, fastened it on whistle posts and crossing signs, and in fact they hung it on anything they could hang it on, and keep

the wires off from the ground.    The main object they were working under was the communication of some kind between Alpena and Bay City, for the benefit of the railroad company and the telegraph company."

Both parties agree that the line was but a temporary one because neither could wait for a permanent construction.

Our conclusion is that when the storm and sleet destroyed the line it was the duty of defendant under its contract to reconstruct the line, if requested by plaintiff, as soon as the weather would permit, but the proof shows that it could not have been reconstructed for several months, and both parties were in need of immediate service, so this temporary line was constructed by them jointly to secure that service. We do not think this construction was understood by either party to be the reconstruction provided for in the contract.    If it were, then defendant satisfied the requirement of the contract as to reconstruction by erecting this temporary line.    Had the defendant not terminated the contract between the parties it would have been its duty to reconstruct a permanent line as soon as the weather permitted, notwithstanding this temporary line.    If the contract had provided that defendant should furnish continuous service it would have presented a different question, but it simply required defendant to reconstruct when requested. The contract nowhere binds defendant to construct a temporary line, and a permanent line, too.    Suppose the contract had not been terminated and the plaintiff had requested defendant to reconstruct the line and defendant had replied "I have already reconstructed the line by erecting this temporary one," does any one think that the plaintiff would have acquiesced in that conclusion and accepted the temporary line as a satisfaction of the reconstruction clause of the contract? If it would not, then the work done on this temporary

line was outside of their contract, and each should share the expense of its construction. With this view the judgment is reversed and vacated, with costs to defendant, without new trial.·

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.